FILED
2021 JUN 2 AM 10:25
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| STEPHEN RUFUS,<br><br>    Plaintiff,<br><br>v.<br><br>PACIFICORP dba ROCKY MOUNTAIN POWER and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 57,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**<br>**(DOC. NOS. 33 & 35)**<br><br>Case No. 2:19-cv-00377-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Stephen Rufus brought this action against his employer, Pacificorp dba Rocky Mountain Power ("RMP") and his union, International Brotherhood of Electrical Workers, Local Union No. 57 ("IBEW"). Mr. Rufus asserts two claims: (1) a breach of contract claim against RMP under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of the collective bargaining agreement; and (2) a claim for breach of the duty of fair representation by IBEW. (Compl. ¶¶ 25–38, Doc. No. 2.)

Before the court are RMP's motion for summary judgment ("RMP Mot.," Doc. No. 35), which IBEW joins, and IBEW's motion for summary judgment ("IBEW Mot.," Doc. No. 33), which RMP joins. Defendants move for summary judgment on both claims. The court held a hearing on the motions on May 24, 2021. (Doc. No. 41.) Having considered the parties' briefing

1

and arguments at the hearing, the court[1] GRANTS Defendants' motions and enters summary judgment in favor of Defendants on Mr. Rufus's claims. Put simply, Mr. Rufus failed to present facts sufficient to establish RMP breached any contract in removing him from his apprenticeship program. And Mr. Rufus failed to present evidence sufficient to prevail on his claim for breach of the duty of fair representation against IBEW.

SUMMARY JUDGMENT STANDARD

Courts grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted). In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). But, "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

---

[1] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 17.)

## UNDISPUTED MATERIAL FACTS[2]

Mr. Rufus has been an employee of RMP and a member of IBEW since 2006. (IBEW Mot., Statement of Undisputed Facts ("IBEW Facts") ¶ 1, Doc. No. 33.) In March of 2015, Mr. Rufus applied for and was accepted into an Estimator Apprenticeship Program ("EAP"), which is administered by RMP, in the hope of becoming an estimator journeyman. (*Id.* ¶ 2.) Estimator journeymen are tasked with determining how to shift power from RMP to customers, including designing jobs and estimating the costs and supplies needed. (*Id.* ¶ 3.) The EAP involves several years of classroom training, including coursework and tests, as well as practical, on-the-job training. (*Id.* ¶ 4.)

After apprentices successfully complete all their coursework over several years, their final requirement is to take an exam. (*Id.* ¶ 6.) This final exam is graded by an examining committee consisting of an RMP representative and members appointed by IBEW. (*Id.* ¶¶ 7–8.) If an apprentice does not pass the final exam, her participation in the EAP will terminate. (*Id.* ¶ 9.) But the examining committee can recommend that RMP allow an apprentice to retake the final exam if it determines there is a reasonable chance the apprentice will ultimately earn a passing score. (*Id.* ¶ 10.)

---

[2] For purposes of this order, the court draws from the list of undisputed facts offered in Defendants' motions for summary judgment (Doc. Nos. 33 & 35). Mr. Rufus filed one opposition brief to both motions and did not respond to or dispute any facts set forth in the motions. (*See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), Doc. No. 36.) Accordingly, the court considers these facts undisputed for purposes of the motions. *See* Fed. R. Civ. P. 56(e)(2). Mr. Rufus presented his own list of undisputed facts, largely duplicative of Defendants' lists. (*See* Opp'n 3–4, Doc. No. 36.) Defendants dispute only one of Mr. Rufus's facts, as addressed in the discussion section below. (*See* Opp'n, Undisputed Material Facts ¶ 10, Doc. No. 36.)

In determining how many times to allow an apprentice to take the final exam, RMP references an internal policy entitled the Testing and Journeyman Advancement Requirements for Local 57 Apprentice Estimators ("Testing Policy"). (RMP Mot., Undisputed Material Facts ("RMP Facts") ¶ 10, Doc. No. 35.) The Testing Policy contains the following provisions regarding the number of exam attempts permitted:

> Failure to successfully pass the final portion of the Journeyman Estimator Examination after all allowed (possibility of 3) attempts will result in termination of the apprenticeship. All subsequent attempts will be contingent upon recommendation of the examination committee.
>
> - The second attempt for an apprentice to participate in this examination process will be contingent on a recommendation from the Examination Committee and be administered at the forty-five (45) month period of apprenticeship tenure.
>
> - The third attempt for an apprentice to participate in this examination process will also be contingent on a recommendation from the Examination Committee and be administered at the forty-eight (48) month period of apprenticeship tenure.

(Ex. F to RMP Mot., Testing Policy, Doc. No. 35-6.)

On September 28, 2018, Mr. Rufus took the final exam for the first time but failed to pass it, earning a score of 77 out of 100. (IBEW Facts ¶ 12, Doc. No. 33.) A passing score on the final exam is 80 out of 100. (*Id.* ¶ 13.) The committee met and reviewed Mr. Rufus's exam and determined he had struggled to timely complete crew notes, failed to identify the correct material, and missed ordering critical items. (*Id.* ¶ 14.) The committee then called Mr. Rufus to appear before them. (*Id.* ¶ 15.) During that meeting, the committee asked Mr. Rufus why he thought he had failed and provided suggestions on how to succeed, including suggesting that he take practice exams. (*Id.*) Ultimately, the committee recommended to RMP that Mr. Rufus be allowed to take the final exam a second time. (*Id.*)

4

RMP accepted this recommendation, and, on December 7, 2018, Mr. Rufus took the final exam a second time. (*Id.* ¶ 16.) However, this time he earned an even lower score: 67 out of 100, again failing the exam. (*Id.*) The committee met again to review Mr. Rufus's exam. (*Id.* ¶ 17.) The committee noted Mr. Rufus scored substantially lower on the second exam, failed to even complete the exam, and made the same mistakes he made on the first exam. (*Id.*) The committee then unanimously recommended to RMP that Mr. Rufus be denied another chance to take the exam—a decision resulting in his removal from the EAP. (*Id.* ¶ 18.) RMP received the committee's recommendation, declined to permit Mr. Rufus to take the final exam a third time, and removed him from the EAP. (*Id.* ¶ 19.)

When an apprentice is removed from an apprenticeship, RMP gives the apprentice ninety days to bid into a position they are qualified for. (*Id.* ¶ 20.) Mr. Rufus took advantage of this option and bid into an RMP warehouse position. (*Id.* ¶ 21.)

Mr. Rufus then approached Brent Donohue, IBEW's business manager, about filing a grievance to allow him to retake the final exam. (*Id.* ¶ 22.) In an email to Mr. Donahue, Mr. Rufus apologized for not finishing the exam, claimed he had an "excellent grasp of the knowledge that is needed for an estimator" and asked for a third attempt at the exam "like they have allowed other estimators the opportunity." (*Id.* ¶ 24; Ex. R to IBEW Mot., Email from Stephen Rufus to Brent Donahue (Dec. 28, 2018), Doc. No. 33-19 at 2.) Mr. Rufus's only explanation for failing was that he was told he used an "incorrect wire type," but he provided no rationale for not finishing the exam. (IBEW Facts ¶ 24, Doc. No. 33; Ex. R to IBEW Mot., Doc. No. 33-19 at 2.)

In the eight years before Mr. Rufus's removal, IBEW had filed at least nine grievances based on apprentices being removed from the EAP, including several where the apprentice had been removed for failing the final exam. (IBEW Facts ¶ 25, Doc. No. 33.) None of those grievances were successful. (*Id.* ¶ 26.) RMP had repeatedly refused to allow an apprentice to continue in the EAP once removed or to allow an apprentice to take a final exam for a third time. (*Id.*)

However, in 2009 Mr. Donohue had represented a female employee who had been in the EAP and was removed after failing to pass the final exam. (*Id.* ¶ 27.) The day after she was removed, she presented Mr. Donohue with a six-page document outlining concerns she had about her removal, including that she had been harassed by her manager, and that her harasser had been involved in the final exam, causing great stress and anxiety and leading to her failure. (*Id.*) Rather than filing a formal grievance, IBEW (through Mr. Donohue) informally discussed the situation with RMP, explained the employee's rationale for failing, and provided RMP with a copy of her written justification. (*Id.*) RMP investigated the situation and ultimately gave the employee another opportunity to take the exam. (*Id.*)

After receiving Mr. Rufus's email, Mr. Donohue reviewed the collective bargaining agreement and relevant policies and discussed with Jim Snyder, IBEW's assistant business manager, how to best handle Mr. Rufus's situation. (*Id.* ¶ 28.) They discussed Mr. Rufus's exam failures—including that on the second exam he did substantially worse, made the same mistakes, and failed to even finish the exam—and Mr. Rufus's explanation for his failures. (*Id.* ¶ 29.) They also noted the Testing Policy did not guarantee apprentices additional opportunities to take the final exam. (*Id.*) Mr. Snyder explained the examining committee could recommend

6

to RMP management that an apprentice be allowed another testing opportunity but, ultimately, RMP had the discretion (and final decision) whether to allow another exam. (*Id.*) They also discussed that the collective bargaining agreement required Mr. Rufus to pass the exam before becoming a journeyman. (*Id.*)

Based on the information he had been given by Mr. Rufus, his review of the collective bargaining agreement and associated documents, and the fact that the only successful challenge to a removal from the EAP was outside of the grievance process, Mr. Donohue decided a formal grievance had almost no chance of success. (*Id.* ¶ 30.) Instead, he decided IBEW should handle the matter as it had with the female employee in 2009 and directly approach RMP about the situation outside the formal grievance process. (*Id.* ¶ 31.) He believed this approach would best convince RMP to allow Mr. Rufus to take the final exam a third time. (*Id.*)

To this end, Mr. Donohue first contacted John Robertson, RMP's Principal Labor Relations Specialist, explained Mr. Rufus's situation, and asked RMP to allow Mr. Rufus to take the exam a third time. (*Id.* ¶ 32.) On December 28, 2018, Mr. Donohue emailed Mr. Rufus's written explanation for failing the exam to Mr. Robertson. (*Id.* ¶ 33.) Mr. Donohue also explained to Mr. Robertson that Mr. Rufus primarily failed because he had run out of time, not because he had made mistakes, and he argued Mr. Rufus had a good grasp of the material. (*Id.* ¶ 34.) Mr. Donohue reminded Mr. Robertson that RMP had made an enormous investment in training Mr. Rufus—an investment which would be lost if he were not allowed to retest. (*Id.*)

RMP took Mr. Donohue's request under consideration. (*Id.* ¶ 36.) The management team investigated and reviewed Mr. Rufus's work as an apprentice but ultimately determined no mitigating factors supported permitting Mr. Rufus to take a third exam. (*Id.*) Accordingly, RMP

7

denied the request to allow Mr. Rufus to take the final exam a third time and continue in the EAP. (*Id.*)

Mr. Donohue believed RMP's decision not to allow Mr. Rufus a third examination attempt was justified and fair. (*Id.* ¶ 37.) Because of this and IBEW's inability to successfully grieve similar situations, IBEW (acting through Mr. Donohue) decided it could do nothing more and denied Mr. Rufus's requests to continue pursuing this matter. (*Id.*)

## DISCUSSION

Mr. Rufus's claims against RMP and IBEW are "inextricably interdependent." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). Under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, an individual employee may bring suit against an employer for breach of the collective bargaining agreement. *DelCostello*, 462 U.S. at 163. Ordinarily, "an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement" and will be bound by the result. *Id.* at 163–64. If, however, "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee may sue both the employer and the union. *Id.* at 164. To prevail against either the employer or the union, the employee must show both a breach of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union. *Id.* at 165.

Here, Mr. Rufus claims RMP breached the collective bargaining agreement when it removed him from the apprenticeship program without permitting him to take the final exam a

third time.³  (Compl. ¶¶ 25–28, 32–33, Doc. No. 2.)  He claims IBEW breached its duty of fair representation by failing to file a grievance on his behalf to formally protest RMP's denial of a third exam attempt and his removal from the program.  (Compl. ¶¶ 34–38, Doc. No. 36.)

### A. Claim Against RMP

Based on the undisputed facts, Mr. Rufus cannot prevail on his breach of contract claim against RMP.  The elements of a breach of contract claim are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.  *Am. W. Bank Members, L.C. v. Utah*, 342 P.3d 224, 230–31, 2014 UT 49, ¶ 15.

Mr. Rufus acknowledges the collective bargaining agreement does not address specific testing requirements for an estimator apprentice.  (Opp'n 7, Doc. No. 36.)  However, he notes the agreement references "testing" in the section addressing apprenticeship programs,⁴ and he argues this reference should be interpreted in light of the provisions of RMP's Testing Policy.  Based on the language of RMP's Testing Policy, Mr. Rufus contends he was contractually entitled to three attempts to pass the final exam.  (Opp'n 7, Doc. No. 36.)  RMP argues that, even assuming it was bound by the provisions of its internal Testing Policy, the unambiguous language of the Testing

---

³ In his Complaint, Mr. Rufus also alleged RMP breached the collective bargaining agreement by demoting him without a hearing. (Compl. ¶¶ 29–31, Doc. No. 2.) At the summary judgment hearing, however, Mr. Rufus confirmed his demotion and removal from the apprenticeship program were the same event, and he presented no separate facts or argument in his summary judgment brief regarding his demotion or lack of a hearing.

⁴ The collective bargaining agreement states that the Joint Apprentice Training Committee "is responsible for the administration of the program and issues such as program performance, training, pre-qualification, testing[,] and individual employee progress." (Ex. A to Opp'n, Collective Bargaining Agreement 24, Doc. No. 36-1.) Mr. Rufus does not address the collective bargaining agreement in his statements of facts.  However, he attached a copy of it to his opposition brief and quoted this provision in his argument. (Opp'n 7, Doc. No. 36; Ex. A to Opp'n, Collective Bargaining Agreement 24, Doc. No. 36-1.)

Policy does not guarantee three exam attempts, and RMP followed the requirements of the Testing Policy in denying Mr. Rufus's request for a third exam.  (RMP Mot. 9–11, Doc. No. 35.)

The Testing Policy contains three relevant paragraphs addressing the number of exam attempts.  The first paragraph states: "Failure to successfully pass the final portion of the Journeyman Estimator Examination after all allowed (possibility of 3) attempts will result in termination of the apprenticeship.  All subsequent attempts will be contingent upon recommendation of the examination committee."  (Ex. F to RMP Mot., Testing Policy, Doc. No. 35-6.)  This paragraph, in isolation, is ambiguous as to whether three attempts are guaranteed.  The phrase "all allowed (possibility of 3) attempts" does not make clear whether all apprentices will be allowed three attempts, or whether the second and third attempt are merely possible but not guaranteed.  And it is unclear whether "subsequent attempts" refers to the second and third attempts, or any further attempts beyond the first three.

However, these ambiguities are resolved by the two paragraphs immediately following this provision, which state:

- The second attempt for an apprentice to participate in this examination process will be contingent on a recommendation from the Examination Committee and be administered at the forty-five (45) month period of apprenticeship tenure.

- The third attempt for an apprentice to participate in this examination process will also be contingent on a recommendation from the Examination Committee and be administered at the forty-eight (48) month period of apprenticeship tenure.

(Ex. F to RMP Mot., Testing Policy, Doc. No. 35-6.)  These paragraphs plainly make any second and third exam attempts contingent on the examination committee's recommendation.  Read together, the relevant paragraphs of the Testing Policy conclusively indicate three exam attempts

10

are not guaranteed, and any second or third attempt requires the examination committee's recommendation. No reasonable interpretation of these provisions entitles Mr. Rufus to a third exam attempt without such a recommendation.

The undisputed facts show RMP followed these Testing Policy provisions in denying Mr. Rufus's request for a third exam. After Mr. Rufus failed the first exam, RMP accepted the committee's recommendation that he be allowed to take the exam a second time. After Mr. Rufus failed the second exam, RMP accepted the committee's recommendation to deny him a third exam and to remove him from the apprenticeship program. RMP's actions were entirely consistent with the Testing Policy. Mr. Rufus has presented no evidence that RMP breached this policy or any other contractual provision.

Mr. Rufus notes that neither the Testing Policy nor the collective bargaining agreement expressly state a lower test score on the second attempt is grounds for removal from the program. (Opp'n 8, Doc. No. 36.) But this is immaterial. The Testing Policy provides that failure to pass the final exam will result in termination of the apprenticeship, and that any second or third attempt is contingent on the examining committee's recommendation. The absence of a contractual provision addressing the criteria for the committee's recommendation does not establish RMP breached any contract in following the recommendation.

Mr. Rufus also argues custom and practice should be considered as part of the collective bargaining agreement, (Opp'n 8, Doc. No. 36.), but he did not present evidence of custom or practice on summary judgment.

In short, Mr. Rufus has failed to present facts sufficient to establish RMP breached any contract in denying him a third exam attempt and removing him from the apprenticeship

program.  Accordingly, Mr. Rufus cannot prevail on his breach of contract claim against RMP. Because his claim against RMP fails, both RMP and IBEW are entitled to summary judgment on Mr. Rufus's claims.

### B.  Claim Against IBEW

Mr. Rufus also cannot prevail on his claim against IBEW for breach of the duty of fair representation.

"In light of a union's position as the sole and exclusive bargaining representative of an employee with his employer, every collective bargaining union has a duty to represent its members fairly in its dealings with management." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998).  A union breaches its duty of fair representation in a grievance or arbitration procedure if it acts in a discriminatory, arbitrary, or perfunctory fashion, *id.*, or if it acts in bad faith, *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994).

*1.  Arbitrary or Perfunctory Conduct*

A union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Webb*, 155 F.3d at 1239 (citation omitted).  However, a union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Consadine*, 43 F.3d at 1357 (internal quotation marks omitted).  A union "is given considerable latitude in its handling of the grievance process," and "[a]n employee cannot compel [a union] to pursue grievances having no legal merit." *Chernak v. Sw. Airlines Co.*, 778 F.2d 578, 581 (10th Cir. 1985).

Mr. Rufus contends IBEW acted in an arbitrary fashion in failing to file a grievance on his behalf, despite having filed many prior grievances protesting other employees' removal from apprenticeship programs. (Opp'n 12, Doc. No. 36.) In support of this argument, he asserts he was told by his union representatives that his complaint was "not grievable." (Opp'n, Undisputed Material Facts ¶ 10, Doc. No. 36.) He argues this was inconsistent with IBEW's history of filing grievances based on similar complaints. (Opp'n 12–13, Doc. No. 36.)

IBEW, on the other hand, argues the undisputed evidence shows Mr. Rufus did not have a meritorious grievance and it acted rationally in deciding not to file a grievance on his behalf. (IBEW Mot. 14, Doc. No. 33.) IBEW contends it reasonably concluded a grievance would not be successful, based on a consideration of Mr. Rufus's circumstances, his explanation for failing his first two exam attempts, a review of RMP's Testing Policy, and IBEW's history of unsuccessful grievances for other employees removed from apprenticeship programs. (*Id.* at 15–19.) IBEW also challenges Mr. Rufus's factual assertion that he was informed his complaint was "not grievable," arguing it is unsupported by the deposition testimony cited. (IBEW's Reply in Support of Its Mot. for Summ. J. 3–4, Doc. No. 38.) IBEW argues that even if Mr. Rufus's assertion were true, it is immaterial because IBEW never considered whether the complaint was grievable in assessing whether to file a grievance on Mr. Rufus's behalf. (*Id.* at 4.)

Analyzing the factual dispute: Mr. Rufus initially testified an IBEW representative told him his removal from the apprenticeship program was "not a grievable offense." (Ex. B to IBEW Mot., Dep. of Stephen Rufus 151:19, Doc. No. 33-3.) When pressed, however, he admitted: "I can't recall what was specifically said, but I was told that it was not something that the union would grieve for me." (*Id.* at 205:20–22.) Even assuming this testimony supports a

13

finding that Mr. Rufus was told his complaint was not grievable, this fact is of no consequence. IBEW's undisputed evidence shows this was not the basis for IBEW's decision not to file a grievance on Mr. Rufus's behalf. Rather, IBEW determined a grievance would be unsuccessful, after considering Mr. Rufus's circumstances, the Testing Policy, and its history of prior, unsuccessful grievances. (IBEW Facts ¶ 30, Doc. No. 33.) Accordingly, whether Mr. Rufus was told his complaint was not grievable is beside the point.

Based on the undisputed facts, Mr. Rufus cannot show IBEW arbitrarily ignored a meritorious grievance or processed it in a perfunctory fashion. IBEW representatives discussed and considered Mr. Rufus's circumstances, including that he did substantially worse on the second exam, made the same mistakes, and failed to finish. (*Id.* ¶ 29.) They also considered the fact that Mr. Rufus provided no rationale for his worsening performance and failure to finish. (*Id.* ¶¶ 24, 29.) They reviewed the Testing Policy and concluded it did not guarantee apprentices additional opportunities to take the final exam. (*Id.* ¶ 29.) Finally, they considered the fact that none of IBEW's prior grievances challenging employees' removal from the apprenticeship program had been successful. (*Id.* ¶¶ 25–26, 30.) Based on these considerations, IBEW determined a formal grievance would be unsuccessful and the best chance of convincing RMP to allow a third exam attempt would be by approaching RMP outside the grievance process—as IBEW had done successfully before. (*Id.* ¶¶ 30–31.) Under these circumstances, IBEW's decision not to pursue a formal grievance was not "so far outside a wide range of reasonableness as to be irrational." *Consadine*, 43 F.3d at 1357 (internal quotation marks omitted).

Mr. Rufus neither disputes these facts, nor presents additional material facts sufficient to show IBEW's decision was irrational or perfunctory. Thus, he has failed raise a triable issue of

fact as to whether IBEW acted in an arbitrary or perfunctory fashion in failing to file a grievance on his behalf.

Mr. Rufus also argues IBEW should have pursued arbitration regarding the interpretation of the Testing Policy and whether a third attempt was guaranteed. (Opp'n 9–10, Doc. No. 36.) However, as discussed above, the interpretation urged by Mr. Rufus is contrary to the plain language of the Testing Policy. This leaves Mr. Rufus unable to show a challenge to his removal on this basis would have been meritorious. IBEW did not act irrationally in failing to pursue arbitration on this issue.

For all these reasons, Mr. Rufus cannot prevail on the theory that IBEW acted in an arbitrary or perfunctory fashion.

    2. *Bad Faith*

Bad faith "requires a showing of fraud, or deceitful or dishonest action." *Consadine*, 43 F.3d at 1357. Mr. Rufus argues in perfunctory fashion that IBEW acted in bad faith by not filing a grievance on his behalf, despite filing prior grievances for other employees removed from the apprenticeship program. (Opp'n 13, Doc. No. 36.) But Mr. Rufus has presented no evidence of fraud, deceit, or dishonesty by IBEW. Hence, he failed to create a triable issue of fact to support a claim that IBEW acted in bad faith.

    3. *Discrimination*

"A union's discriminatory conduct violates its duty of fair representation if it is invidious." *Consadine*, 43 F.3d at 1359 (internal quotation marks omitted). "[D]iscrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus." *Id.* at 1359–60.

Mr. Rufus does not make claims of discriminatory conduct in his opposition. At the hearing, he argued for the first time that IBEW discriminated against him by treating him differently than the employees for whom IBEW filed grievances. The court need not consider arguments raised for the first time at oral argument. *Deseret Trust Co. v. Unique Inv. Corp.*, No. 2:17-cv-00569, 2018 U.S. Dist. LEXIS 239267, at *9 (D. Utah July 2, 2018) (unpublished). In any event, Mr. Rufus conceded at the hearing that this treatment was not based on any constitutionally protected category, and he failed to present any evidence of prejudice or animus. Accordingly, he cannot prevail on a theory that IBEW's conduct was invidiously discriminatory.

Because Mr. Rufus has failed to present evidence of arbitrary or perfunctory conduct, bad faith, or discrimination by IBEW, Mr. Rufus cannot prevail on his claim for breach of the duty of fair representation against IBEW. Accordingly, both RMP and IBEW are entitled to summary judgment on Mr. Rufus's claims.

## CONCLUSION

The court GRANTS Defendants' motions for summary judgment (Doc. Nos. 33 & 35) and enters summary judgment in favor of Defendants on Mr. Rufus's claims.

DATED this 2nd day of June, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge